A07A1797. CLEVELAND v. THE STATE.
(660 SE2d 777)

SMITH, Presiding Judge.

Sean Cleveland appeals from his convictions of possession with intent to distribute methamphetamine, attempting to traffic in methamphetamine, and no proof of insurance. Cleveland asserts that the trial court erred by denying his motion to suppress and that he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. Cleveland asserts the trial court should have granted his motion to suppress evidence found during the execution of a search warrant, because the warrant was not supported by probable cause and the information provided to the magistrate was stale. We disagree. A search warrant should only be issued

> upon facts sufficient to show probable cause that a crime is being committed or has been committed. The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there

is a fair probability that contraband or evidence of a crime will be found in a particular place.

(Citations omitted.) *State v. Henderson*, 271 Ga. 264, 269 (4) (517 SE2d 61) (1999). We must give "substantial deference" to a magistrate's decision to issue a search warrant. Id.

A grudging or negative attitude by reviewing courts toward warrants, is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case. . . . Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

(Citations and punctuation omitted.) Id. at 269-270 (4).

The record in this case shows that the warrant was issued based upon the following law enforcement affidavit:

On Wednesday 070704 Deputy Ryan Williamson of the Harris County Sheriff's Office stopped a vehicle being driven by Sean Cleveland. . . . The traffic stop was for no tag on the vehicle. Cleveland was taken into custody for driving while license suspended, as his license was suspended. While conducting a[n] inventory of the vehicle[,] drug paraphernalia w[ere] found. A glass pipe, a short green straw with suspected drug residue and a butane torch lighter w[ere] found behind the driver[']s seat. Also found during the inventory search were digital scales, a pill bottle containing a red chalky substance believed to be red phosphorous which is used in the manufacture of Methamphetamine. Inside a cigarette purse located in the rear of the van on the passenger side was found six small plastic bags, each containing a white substance that field tested positive for Methamphetamine (2.3 Grams). The vehicle . . . has a bill of sale to Sean Cleveland. Two people, Ronald Price and Tred Mast, were called to the scene at Cleveland's request. They arrived . . . from 2026 Highway 27, Cataula, Georgia, as told to Cpl. Tony Knotts. Inside the truck was found a small glass bottle containing residue that tested positive for Methamphetamine.

On Saturday 070304, a juvenile, [D. B.] . . . (age 14) was taken by [D. Q.][1] to 2026 Highway 27, Cataula where she was given what was described to her as Methamphetamine from the residence. This residence was positively identified by [D. B.] on Friday, 070904, while in the presence of Sgt. Lynch and Cpl. Walden. . . . [D. B.] described the white substance as a white powder which is consistent with Methamphetamine. She stated that the substance was on the coffee table inside the residence. Further, in this officer's experience[,] Methamphetamine and other illegal substances are commonly used and sold in multiple places by those engaged in the possession of and or sale of methamphetamine. . . .

The affidavit further provided that an examination of tax and utility records on July 9, 2004, showed that Sean Cleveland was the owner of the house located at 2026 Highway 27, Cataula, Georgia. A handwritten notation on the affidavit states that "Mast and Price were arrested . . . for giving false information & suspended license. The glass bottle was found during vehicle inventory."

The magistrate signed the warrant on July 9, 2004 at 3:34 p.m. and it was executed the same day. During a search of Cleveland's house, police officers found devices to smoke drugs in the desk of an office outbuilding and the kitchen counter of the residence, pure distilled ephedrine in a bottle in the home's refrigerator, a straw with residue in the bedroom, and numerous other items commonly used in the manufacture of methamphetamine in a burn pile on the property. They also discovered several surveillance cameras throughout the property and a surveillance monitoring device.

After reviewing all of the information in the affidavit as a whole, we find that it provided sufficient probable cause for the magistrate to issue the search warrant and that the information provided was not stale. See *Tarvin v. State*, 277 Ga. 509, 511 (4) (591 SE2d 777) (2004) (warrant obtained nine days after relevant evidence observed); *Wilbanks v. State*, 176 Ga. App. 533, 534 (3) (336 SE2d 312) (1985) (warrant executed six days after marijuana observed).[2]

2. In his remaining enumeration of error, Cleveland asserts that he received ineffective assistance of counsel because his lawyer did not adequately investigate the case and therefore did not provide him

---

[1] The affidavit listed D. B. and D. Q.'s full names. In order to protect their identity, this court has abbreviated their names.

[2] Our opinion in *Shivers v. State*, 258 Ga. App. 253, 256-257 (573 SE2d 494) (2002), does not require a different result because in *Shivers* the officers merely smelled an odor of marijuana on the defendant's person; they did not see marijuana on the property. Id.

with the information needed to make an informed decision about the State's plea offer. The transcript of the trial and trial counsel's testimony in the motion for new trial hearing both show that trial counsel did not know until the middle of trial that the charges against Cleveland were based upon the evidence obtained during the search of the residence. Until that point, trial counsel believed that the State's evidence was limited to evidence found during the inventory search of Cleveland's vehicle.

The record also shows that Cleveland's trial counsel did not accept the State's offer to examine its file under the State's "open file" policy. Instead, defense counsel relied upon written discovery produced to previous defense counsel by the previous assistant district attorney for the State. Defense counsel believed that the State's case was founded only upon evidence found in the vehicle on July 7, 2004, because the first assistant district attorney assigned to the case omitted the search warrant affidavit from the discovery produced and the indictment recited that the crimes occurred on July 7, 2004. If trial counsel had examined the State's file after taking over the case, however, he would have learned about the search and evidence found on July 9, 2007.

Cleveland claims that he was prejudiced by counsel's ineffectiveness in preparing the case, because he did not know the true nature of the State's charges against him at the time he rejected the State's plea offer for straight probation and a fine.[3] In the motion for new trial hearing, trial counsel confirmed that when discussing the plea offer with Cleveland, he reviewed the evidence against Cleveland that was found in the vehicle and discussed with Cleveland the likelihood of success if they went forward with a trial. Cleveland testified that if he had known that the State's case against him included evidence found in the house, he would have accepted the plea offer of straight probation.

The trial transcript shows that Cleveland's defense to the items seized from the vehicle centered on the claim that it was a work van also used by two other men who later were also arrested. At trial, defense counsel established during cross-examination that these items were either not visible or immediately recognizable as contraband. The contraband, paraphernalia, and surveillance cameras found during the search of the house, however, were more visible.

In *Lloyd v. State*, 258 Ga. 645, 646 (2) (373 SE2d 1) (1988), the Georgia Supreme Court recognized that a "defendant is entitled, under the Sixth Amendment, to competent counsel who performs to

---

[3] Cleveland understood the plea offer to be one year of probation and a $1,000 fine. The State asserted, however, that the offer was "either five or ten years probation with a fine."

the standards expected in the legal profession when deciding whether or not to plead guilty." (Citation omitted.) Id. A defendant "is entitled to be told that an offer to plead guilty has been made and to be advised of the consequences of the choices confronting him." Id. at 648 (2) (a).

In this case, trial counsel failed to advise Cleveland about all of the evidence in the State's case against him due to his failure to examine the State's "open file." Without this information, Cleveland could not make an informed decision about whether to accept or reject the State's plea offer of straight probation. Based upon these peculiar facts, we find that Cleveland has fulfilled his burden of showing that his "counsel's representation fell below an objective standard of reasonableness." (Citation and punctuation omitted.) *Lloyd*, supra, 258 Ga. at 647 (2).

Our analysis does not end here, however, because Cleveland must also demonstrate that "but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citation and punctuation omitted.) *Lloyd*, supra, 258 Ga. at 648 (2) (b).

> In a case in which a defendant complains that his trial counsel was deficient for failing to adequately inform him of the consequences of accepting a plea, such prejudice can only be shown by some indication that at the time the defendant rejected the plea he was amenable to the offer made by the state. *Lloyd v. State.*

(Citation, punctuation and footnote omitted.) *Carson v. State*, 264 Ga. App. 763, 765 (592 SE2d 161) (2003) (whole court).

When Cleveland was first asked in the motion for new trial hearing why he did not accept the State's plea offer, he responded, "Well, — I guess, dumb." Only after additional leading questioning by his counsel, did he testify that he would have accepted the State's offer of probation if he had known the true nature of the State's case against him. In addition, the record shows that he continued to assert his innocence during the sentencing hearing, that the assistant district attorney stated in his place below that "Cleveland was adamant about going to trial," that Cleveland learned during jury selection that the evidence seized in the second search would be used against him, and that Cleveland did not seek to renew the earlier plea offer after learning about the true nature of the State's case. The record also shows that Cleveland knew that the police searched his house because he arrived there from jail while the police were still searching.

This evidence "supports a finding, implicit in the trial court's ruling, that there was no reasonable probability" that Cleveland would have pled guilty but for counsel's ineffectiveness. *Larochelle v.*

*State*, 231 Ga. App. 736, 739 (4) (499 SE2d 371) (1998). See also *Carson*, supra, 264 Ga. App. at 765.

In so holding, we acknowledge the Georgia Supreme Court's statement in *Lloyd*, supra, that it preferred "to examine the facts of each case and grant relief where there is at least an inference from the evidence that the defendant would have accepted the offer as made or something similar. Such an inference could be drawn even where the evidence is disputed or unclear on this question." (Footnote omitted.) 258 Ga. at 648 (2) (b). We believe, however, that we should take care not to read this statement out of context. It was made after the Georgia Supreme Court noted that some jurisdictions find prejudice simply because the defendant's outcome at trial was worse than if he had accepted a more favorable plea offer. The Georgia Supreme Court rejected this approach, preferring to grant relief on a case by case basis "where there is at least an inference from the evidence that the defendant would have accepted the offer as made or something similar." Because the record before the Georgia Supreme Court in *Lloyd* was silent as to whether the defendant would have accepted the plea, no inference could be drawn in *Lloyd*.

The above-quoted language should not be used to alter the well-established "clearly erroneous" standard of review for ineffective assistance of counsel. See, e.g., *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992) (standard of review). Simply because an inference "*could be* drawn even where the evidence is disputed or unclear on this question," does not mean that a trial court is *required* to do so in cases where the evidence is disputed. (Emphasis supplied.) *Lloyd*, supra, 258 Ga. at 648 (2) (b). In the absence of clear direction from the Georgia Supreme Court, we decline to apply this language from *Lloyd* to find prejudice in this case merely because the defendant testified after the fact that he would have accepted the State's plea offer but for counsel's ineffective assistance.[4]

Based on the evidence before it, the trial court was authorized to conclude that Cleveland's claim that he would have accepted the plea lacked credibility. As a result it did not err by rejecting his ineffective assistance of counsel claim.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

---

[4] We also note that, as far as we can discern, in the 19 years since *Lloyd* was decided, neither the Georgia Supreme Court nor this court has used this language to reverse a trial court's rejection of an ineffective assistance of counsel claim and order either a new trial or enforcement of a plea offer.

Decided March 20, 2008 —
Reconsideration denied April 9, 2008 — 

*James D. Lamb*, for appellant.
*J. Gray Conger, District Attorney, William D. Kelly, Jr., Assistant District Attorney*, for appellee.