A90A0797. TIME INSURANCE COMPANY v. LAMAR.
(393 SE2d 734)

BIRDSONG, Judge.

This is an interlocutory appeal by appellant, Time Insurance Company, of the order of the trial court partially denying appellant's motion for summary judgment as to the claim of appellee for insurance policy proceeds.

Appellee/plaintiff. brought suit to recover the benefits under a policy of life insurance issued by appellant, insuring the life of her adult son who at the time of the insurance application was over the age of 18 and in prison. Respondent did not have the son's written consent to obtain such insurance, and the son did not personally submit the insurance application. The evidence is in conflict whether appellee signed her son's name on the application or whether some third person did so on her behalf. Construing the evidence and all reasonable inferences therefrom in appellee's favor and against the movant appellant, we accept that the son's signature was placed on the application by appellee in the presence of and at the direction of the insurance agent. We also find that the most favorable inference, which reasonably can be drawn from the record, including the admissions in judicio contained in appellee's brief and pleadings, is that the insurance agent was at the time of the application a dual agent of both appellant and appellee. About nineteen months after the policy was issued, the insured died in an automobile accident. Appellant subse-

quently learned that the insured had not given his consent, written or otherwise, to the issuance of the policy, and appellant refused to pay appellee's insurance claim, tendering a premium payment refund. *Held*:

1. Appellant asserts that the trial court erred in partially denying its motion for summary judgment by holding that appellant waived the statutory requirement prohibiting the issuance of a valid life insurance policy without the written consent of the insured, and by failing to recognize that appellant was entitled to judgment as a matter of law even if it could have and did waive the written consent requirement.

The trial court concluded, inter alia, that appellee had an insurable interest in her adult son's life, within the meaning of OCGA § 33-24-3 (a), and therefore that the policy was not void within the meaning of OCGA § 33-24-3 (e). The court further found in essence that the policy was not void under the provisions of OCGA § 33-24-6 (a), as this statutory provision is not absolute and could be waived, and that OCGA § 33-24-6 (a) did not preclude petitioner from being estopped by its conduct from contesting the validity of the policy.

With the exception of three statutory "cases" not here relevant, OCGA § 33-24-6 (a) pertinently provides: "No life . . . insurance contract upon an individual . . . *shall be made or effectuated* unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, applies for a life or accident and sickness insurance contract or consents in writing to the contract. . . ." (Emphasis supplied.) This code section contains a clear and unambiguous statement of the public policy of this state, and as such, this court has no authority to place a different construction upon the statutory requirements therein contained, but must construe the statute according to its terms. *Ringewald v. Crawford W. Long Mem. Hosp.*, 258 Ga. 302, 303 (368 SE2d 490).

In *Wood v. N. Y. Life Ins. Co.*, 255 Ga. 300, 304 (336 SE2d 806), the Georgia Supreme Court, responding to a question certified by the United States Court of Appeals for the Eleventh Circuit (*Wood v. New York Life Ins. Co.*, 783 F2d 990 (11th Cir.)), cited with approval and extensively from the order of the district court in the case of *Connecticut Gen. Life Ins. Co. v. Wood*, 631 FSupp. 9 (1) (N.D. Ga.), as follows: " 'In the context of life insurance . . . it is *against public policy* to procure insurance on the life of another without his consent, *even though the insurance was procured by one having an insurable interest.* [Cits.] . . . Section 33-24-6 (a) [OCGA] is an expression of the public policy of Georgia and is an extension of the common law rule that a valid policy of insurance *may not be issued* on the life of an adult without the knowledge and consent of the person insured. [Cit.] The reason is to avoid extending to the beneficiary the tempta-

tion to hasten by improper means the time when he will receive the benefits of the policy. Insurance contracts which violate this common law rule *are against public policy and are void. . . .* [Cit.] . . . While the policy at common law dealt with 'knowledge or consent,' the Georgia Legislature has been even more restrictive by providing that the insured must either apply for the insurance or consent thereto *in writing.*'" (All but last emphasis supplied.) Compare *Wren v. New York Life Ins. Co.*, 59 FRD 484 (N.D. Ga.), aff'd 493 F2d 839. The Supreme Court then concluded that "the failure of [insured] to sign the policies or consent in writing to their issuance renders the policies void *ab initio* as against the policy of the law of this state"; and, *"an insurance contract* that is *void ab initio* as against public policy is never 'in force,' cannot be ratified or affirmed, and *is not subject to being enforced by the courts."* (Emphasis supplied.) *Wood*, supra at 255 Ga. 307; see generally *Wood*, supra at 783 F2d 990.

The public policy of this state is clear, regardless of the technical existence of an *insurable interest* under OCGA § 33-24-3, a life insurance contract issued insuring an adult, under circumstances not qualifying for an exception pursuant to OCGA § 33-24-6 (a) (1)-(4), is void ab initio, *unless* the adult to be insured, being of competent legal capacity to contract, either applied for the insurance personally or consented to it in writing. Accordingly, we find that the policy issued in the case sub judice, purporting to insure appellee's adult son, was void ab initio and *unenforceable by the courts.*

2. Consistent with the above, we find the trial court erred in concluding that this public policy statute could be waived pursuant to OCGA § 1-3-7, or that the appellant insurance company is estopped to assert the contract is void.

Further, OCGA § 1-3-7 is not applicable for several reasons. First, the public policy, above discussed, unequivocally was enacted for the safety and protection of the citizens of this state. In this regard, "[p]rotection to person and property is the paramount duty of government and shall be impartial and complete." Ga. Const. of 1983, Art. I, Sec. I, Par. II. The public policy contained in OCGA § 33-24-6 (a) is one of the basic rights of security enacted for the benefit of the public at large, and of certain insured persons in particular, and thus, it was not a law "established in . . . favor" of insurance companies within the meaning of OCGA § 1-3-7.

Moreover, being enacted for certain basic security purposes, the public policy contained in § 33-24-6 (a) clearly was made for the preservation of public order or good morals and cannot either be "dispensed with or abrogated by any agreement." OCGA § 1-3-7. Accordingly, appellant insurance company cannot abrogate, waive or renounce the provisions of OCGA § 1-3-7, and cannot otherwise *dispense with* the public policy provisions of OCGA § 33-24-6 (a), either

by words of agreement or by acts or conduct of itself or its agent.

Further, no doctrine of estoppel, equitable or otherwise, can be invoked against the insurance company to allow appellee to enforce the terms of the insurance contract in the case sub judice. If an insurance contract which is void ab initio as against public policy is never "in force" and cannot be ratified or affirmed (*Wood*, supra at 255 Ga. 307), it is equally clear that it cannot be "effectuated," contrary to the provisions of OCGA § 33-24-6 (a), merely by attempting to invoke the doctrine of estoppel. Regardless of the legal theory used, such a contract "is not subject to being enforced by the courts." *Wood*, supra at 255 Ga. 307. "To reach a contrary conclusion would permit the unreasonable result that [the conduct of an insurance company or its agent] would breathe life into an insurance contract which the General Assembly [for reasons of individual and public protection] intended to have no life, and would frustrate the strong public policy that no contract for life insurance should be made unless the insured applies for or consents in writing to the contract." *Wood*, supra 255 Ga. 307-308. This we decline to do.

In view of Divisions 1 and 2 above, we find that the insurance policy in the case sub judice is void and unenforceable. Accordingly, the judgment of the trial court must be reversed, and summary judgment entered for appellant/defendant as to appellee/plaintiff's claim under the insurance contract.

*Judgment reversed and case remanded with direction. Banke, P. J., and Cooper, J., concur.*

DECIDED APRIL 27, 1990.

*Fortson & White, Harvey S. Gray, Michael D. St. Amand*, for appellant.

*Friedberg, Stein & Goldstein, Stephen M. Friedberg, Charles I. Pollack, Sexton, Turner & Moody, Lee Sexton, Terry A. Carr*, for appellee.