S94G0947. TALLEY v. MATHIS et al.
(453 SE2d 704)

CARLEY, Justice.

Appellant-plaintiff filed suit, seeking to recover a share of the proceeds of the winning ticket in a lottery sponsored by the State of Kentucky. According to the allegations of appellant's complaint, he and appellee-defendants had agreed to purchase the ticket jointly and to share the proceeds if they won. Appellees moved to dismiss on the ground that the alleged agreement was unenforceable as against public policy. The trial court granted appellees' motion and the Court of Appeals affirmed. *Talley v. Mathis,* 212 Ga. App. 330 (441 SE2d 854) (1994). We granted certiorari in order to review the opinion of the Court of Appeals.

1. "Gambling contracts are void. . . ." OCGA § 13-8-3. Accordingly, if appellant entered into a "gambling contract" with appellees, he has no viable claim against them for the enforcement of that contract. However,

[i]n a gambling contract one of [the parties] is certain to lose. By the terms of such a contract the consideration must fall to the one or the other upon the determination of the specified event. [Cits.]

*Martin v. Citizens Bank of Marshallville,* 177 Ga. 871, 874 (2) (171 SE 711) (1933). Appellant does not allege that he and appellees contracted to gamble against one another and that appellees lost. It is alleged that he and appellees jointly contracted to gamble against the State of Kentucky and that they won.

It follows that the only "gambling contract" involved in this case is that which exists between the State of Kentucky and the holder of the winning lottery ticket. The State of Kentucky is not a party in this action and there is no contention that that state's "gambling contract" would be unenforceable by the holder of the winning lottery ticket. Indeed, the enforceability of that state's "gambling contract" apparently has been recognized through its agreement to pay the lot-

tery proceeds to appellees in their capacities as holders of the winning ticket.

The Court of Appeals erred, therefore, in relying upon OCGA § 13-8-3 as authority for affirming the grant of appellees' motion to dismiss. Appellant alleges that, although he is not an actual holder of the lottery ticket with any viable "gambling contract" claim against the State of Kentucky, he is, as against appellees, one of the owners of the lottery ticket with a viable claim for a share of the proceeds of the winning joint "gambling contract" against the State of Kentucky. Based upon these allegations, the issue to be resolved is whether the public policy of this state will permit appellees to evade enforcement of their own alleged agreement to purchase the lottery ticket jointly with appellant and to share the proceeds of that ticket with him.

2. "A contract to do an immoral or illegal thing is void." OCGA § 13-8-1. However, the lottery was legal in Kentucky and the purchase by a Georgia resident of a ticket in that lottery would not necessarily be an immoral or illegal act. Compare *Bloodworth v. Gay*, 213 Ga. 51 (96 SE2d 602) (1957); *Kelly v. Banda*, 116 Ga. App. 421 (157 SE2d 782) (1967); *Boyd v. Piggly Wiggly Southern*, 115 Ga. App. 628 (155 SE2d 630) (1967). Appellant did not contract with appellees for the illegal purchase in Georgia of the Kentucky lottery ticket. It is alleged that the ticket was legally purchased with joint funds in Kentucky by one of the appellees. If appellant had personally gone to Kentucky and bought a lottery ticket for himself, he would not be guilty of the crime of "gambling" in Georgia. Likewise, he would not be guilty of the crime of "commercial gambling" in Georgia simply because he gave his share of the purchase price to one of the appellees in Georgia who then forwarded the full purchase price to the appellee in Kentucky. Under those circumstances, appellant was merely using appellees as his agents for engaging in the lawful act of gambling in Kentucky.

The only agreement that is alleged to have been reached between appellant and appellees in Georgia was for the lawful purchase in Kentucky of a ticket in that state's lottery. The consideration for this agreement was the joint contribution of the purchase price of the ticket and the exchange of mutual promises to share in any resulting proceeds. There is nothing unlawful in either the agreement or the consideration.

> There is no benefit to the citizens of this [s]tate in prohibiting an agreement of this nature. It will not shelter them from lotteries conducted in sister states. It will not deter people from purchasing lottery tickets in [sister states]. Finding the agreement between [appellant] and [appellees] illegal and unenforceable as against public policy, rather than being of

benefit to [Georgia] residents, would instead reward people who convert the property of others to their own use. There is nothing perceptibly evil, vicious, wicked, immoral or shocking to the prevailing moral sense in this agreement. It was simply an arrangement of convenience and neither party intended to circumvent the law or participate in an illegal act. No [Georgia] law prohibits the purchase of a lottery ticket in [Kentucky] and that is the "act" contemplated here. That contemplated act was legal, therefore the underlying agreement is also legal and enforceable in [Georgia] courts.

*Kaszuba v. Zientara*, 506 NE2d 1, 2-3 (Ind. 1987). See also *Miller v. Radikopf*, 228 NW2d 386 (Mich. 1975); *Castilleja v. Camero*, 414 SW2d 424 (Tex. 1967).

The Court of Appeals erred, therefore, in relying upon OCGA § 13-8-1 as authority for affirming the grant of appellees' motion to dismiss. Contrary to the holding of the Court of Appeals, the public policy of this state would be violated if appellant were denied the opportunity to seek to enforce the alleged agreement against appellees. "Where contracts are not contrary to law, the courts are bound to enforce them as made." *Cauthen v. Central Ga. Bank*, 69 Ga. 733 (3) (1882).

*Judgment reversed. All the Justices concur, except Benham, P. J., and Fletcher, J., who concur in the judgment only.*

DECIDED FEBRUARY 20, 1995 —
RECONSIDERATION DENIED MARCH 17, 1995.

*Davis, Gregory & Christy, Hardy Gregory, Jr., Jones, Byington, Durham & Payne, Frank H. Jones,* for appellant.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew, Mark M. J. Webb, Shaw, Maddox, Graham, Monk & Boling, C. Wade Monk II, Smith, Price & Wright, S. David Smith, Jr.,* for appellees.